IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH – CENTRAL DIVISION

FILED U.S. DISTRICT COURT
2006 JUN 27 A 10: 51
DISTRICT OF UTAH
BY: DEPUTY CLERK

# U.S. District Court Complaint

**Plaintiff**

    Janet Jamison

vs

Judge Tena Campbell
DECK TYPE: Civil
DATE STAMP: 06/27/2006 @ 11:19:34
CASE NUMBER: 2:06CV00514 TC

**Defendants**

    Smith's Food and Drug Center, Inc.
    Jennifer Buttrick, Front End Supervisor
    Jeff Short, Store Manager

    UALD (Utah Anti-Discrimination and Labor Division) File No. A6- 0161
    EEOC Case No. 35CA600170

## Jurisdiction

This action is brought pursuant to Title VII of the Civil Rights Act of 1964 as amended for employment discrimination.  Jurisdiction is specifically conferred on this Court by 42 U.S.C. Section 2000e(5).  Equitable and other relief are also sought under 42 U.S.C. Section 2000e(5)(g).  Jurisdiction is also based on 28 U.S.C. Section 1981 et seq.

# Parties

| | |
|---|---|
| **Plaintiff:** | Janet Jamison<br>Attorney Pro Se<br>P.O. Box 1191<br>Centerville, Utah 84014 |
| **First Defendant:** | Zane Day<br>Regional Director<br>Smith's Food and Drug Center, Inc.<br>Corporate office<br>1550 South Redwood Road<br>SLC, Utah 84104 |
| **Second Defendant:** | Jennifer Buttrick<br>Front End Supervisor<br>Smith's Food and Drug<br>402 6th Avenue<br>SLC, Utah 84103 |
| **Third Defendant:** | Jeff Short<br>Store Manager<br>Smith's Food and Drug<br>402 6th Avenue<br>SLC, Utah 84103 |

# Nature of Case

1. The address at which I was employed by Defendants is:

   Smith's Food and Drug
   402 6th Avenue
   SLC, Utah 84103

2. The last discriminatory act was on June 22nd 2005.

3. I filed charges with the Utah Anti-Discrimination and Labor Division (UALD) regarding the Defendants discriminatory conduct on December 23rd 2005.

4. My UALD Charge regarding the Defendant's discriminatory conduct was "waived" to the Equal Employment Opportunity Commission (EEOC) on January 5th 2006.

5. The EEOC sent the attached "Notice of Right to Sue" (Exhibit A) on March 24th 2006, which I received on approximately March 29th 2006.

6. The discriminatory acts which are the basis of this suit are:

   a. Invasion of privacy, harassment and degradation during my employment at "the Avenues" location of Smith Food and Drug.

   b. Management's negligence towards the harassment and degradation that was occurring during my employment at Smith's Food and Drug.

   c. I was subjected to harassment by the Front End Supervisor and then terminated.

   d. Invasion of privacy and defamation of my character while employed at "the Avenues" location of Smith's Food and Drug.

   e. Smith's Food and Drug, Inc. allowing the premises of "the Avenues" location to be staged as part of the harassment that is a result of my disability.

7. Defendant's conduct is discriminatory with respect to my Disability, Race and financial status quo (creed).

8. The Defendants are still committing these acts of harassment and degradation against me whenever I am on errands at "the Avenues" location of Smith's Food and Drug (to be filed in a separate complaint).

## Cause of Action

A brief synopsis of my circumstances:

In May of 1988 while working as a Systems Programmer for Allstate Insurance Company (Northbrook, Illinois), I was attached to a communications system without my consent.

This system allows those that are given access:

- to read and control my thoughts,
- to control my actions and behavior,
- to view and control what my eyes focus on
- and to control my bodily functions.

Those responsible for my being involuntarily held on this system are giving:

- late, great and distant relatives,
- individuals from my past and personal past,
- the friends, relatives and personal associations of individuals from my past and personal past,
- individuals from environments I frequent, think of frequenting or is associated with in any capacity
- and the friends, relatives and personal associations of those individuals,

access to my person and private existence via this system and as a result of the abuse of invasion of privacy and the staging that is occurring in my immediate environments (using the individuals stated above), I am harassed in every environment I frequent, including my work environments.

It is because my private existence is not "acceptable" as a low income (or fixed income) African American, that "the people" (distant poor relatives) are given access to my person and private existence via this system and other employees, management, customers, e.t.c. who are staged in my work environment are allowed to participate in the harassment.

I am being subjected to reverse discrimination while involuntarily held on this communications system and not only does the stress and anxiety associated with the harassment at times prevents me from working, the harassment usually results in termination of my employment.

I am considered disabled by the federal government because the harassment that is allowed while I am involuntarily held on this system prevents me from securing "gainful" employment.

*Cause of Action Brief Synopsis Continued*

NOTE: Because of the secrecy surrounding my being involuntarily held on this system, I do not have and can not obtain "physical evidence" to prove the existence of this system while I am held on this system. The harassment is occurring and over the 18 years while involuntarily held on this system there are hundreds of thousands of individuals who have participated.

I want to also note that:

- I have no control over who they give access to my person and private existence via this system nor do I have control over my thoughts, actions, reactions and behavior while they are transmitting (controlling my thoughts, actions and behavior via this system).

- that during those entire 27 days of employment at Smith's Food and Drug "the people" were allowed to transmit my actions and behavior every second of the day and night (24/7).

- and that after 18 years of transmittal abuse while involuntarily held on this system and the overwhelming stress and anxiety associated with the harassment, I can not recall certain details during that 27 day ordeal while employed with the Defendant.

  I did not know the names of every employee at "the Avenues" location during my employment, of those names I was familiar with I can not recall nor can I recall the exact day and time certain incidents occurred. Other than the recent June 14th and June 4th 2006 incidents stated in Count I (Page 7), all of the incidents stated in the cause of action did occur within those 27 days of employment at Smith's Food and Drug, from May 25th 2005 until June 22nd 2005.

  The employee participation referred to in this complaint were those who were employed at that location during this time.

The terms "associates", "employees" or "other employees" and "co-workers" are used interchangeably in this complaint.

| | | | | | | | |

*Cause of Action Continued*

1. I allege that the Defendants has discriminated against me and that the following facts are the basis of my allegations.

    Count I: As indicated in the *"brief synopsis of my circumstances"*, everyone at "the Avenues" location of Smith's Food and Drug were staged in that environment and given access to my private existence via this system. Because of my race, disability and financial status quo, those who were given access to my person and private existence via this system while in that particular environment and those (other employees) who were staged at that location, were allowed to harass and subject me to degradation during my employment.

    Facts: Since day 1 of my employment during ever hour I was scheduled to work, I was verbally and sexually harassed by other employees, management, customers and other individuals associated with "the Avenues" location who were participating in the harassment that is allowed while I am involuntarily held on this system.

    Depending on what I had in my diet or what transpired in my private existence while not on company time that was not considered "acceptable" by those in the Smith's "audiences", in reference to a means of financial security as opposed to being employed at that location of Smith's Food and Drug, whenever I was on schedule the other employees and customers were constantly making comments and remarks towards me about disgusting degrading sex acts (oral copulation, sodomy and bestiality).

    I was also being subjected to degradation by other employees who were contaminating products of consumption I routinely have in my diet with their waste (feces and urine), the waste of other people and instructing "the people" (distant poor relatives) who had access to my person via this system to transmit ("carry") consuming those products.

    Even though the degradation was occurring on a daily basis, there are only 2 incidents that I can clearly recall. On 2 separate occasions the employees in the Bakery department (during my employment), contaminated a plain bagel and glazed donuts samples with human waste for purposes of my ingesting it.

    The bagel was contaminated with the waste of an employee who is supposedly an "ord"[1] and the glazed donuts were left to sample by the general public after the contamination. "The people" who were given access to my person via this system while in that environment transmitted consuming both of these products, the bagel of which they knew had been contaminated.

*Count I Facts Continued*

> The harassment while employed at "the Avenues" location of Smith's was blatant, the environment was tense and combined with "the people" transmitting my brain while in that environment, those 27 days of employment at Smith's Food and Drug were grueling.
>
> It was obvious I was not welcome in that environment.
>
> NOTE: The anxiety associated with not being able to do anything immediately about being transmitted into demoralization and degradation at the hands of "the people" (distant poor relatives) who do not like me, on the opinion of other associates and whomever else wanted to "waste" products of consumption I routinely have in my diet, was becoming overwhelming. Had Jennifer Buttrick not terminated my employment I would have soon once again had to resort to psychotropic drug therapy to cope with the harassment.
>
> And, as recently as Wednesday June 14th 2006 I purchased a 16 oz bottle of Lubriderm brand sensitive skin moisturizer at Wal-Mart located at 350 West Hope Avenue in SLC, I believe the bottle of moisturizer I purchased that day contains the waste of Jennifer Buttrick (as of the date this complaint I have a sample of the moisturizer in the original container for testing). On June 4th 2006 an employee by the name of Marie Sandoval at my current employer Radisson Hotel contaminated a "shuttle" of coffee with what I also believe was the waste of Jennifer Buttrick, that "shuttle" of coffee was later served to the clients whose event was held that day. Marie Sandoval was recently hired as a Banquet Server and is a relative of the Salt Lake County Sheriff's Office Spokeswoman Sgt. Rosie Rivera and "Pearl" the Co-Manager at "the Avenues" location of Smith's.

[1] Use of the phrase "supposedly an ord" is in reference to *working class* young ladies who either live with their parents or their parents finance most of their existence while they spend of their working dollars on *expensive* items such as french manicures, salon formula hair care and skin care products for reasons of their image. The term "ords" or the ordinaries are in reference to cute healthy middle class young people who are really somewhat practical and would only use salon formula hair care and skin care products if that was their preference.

Count II: Jennifer Buttrick and Jeff Short were fully aware of the other employees participation in the contamination harassment and that I was being harassed by customers yet they did nothing to alleviate the harassment whenever I was on schedule such as reprimanding those employees who were participating, reporting the contaminations to the authorities or adjusting my tasks to jobs that would not directly expose me to the customers.

Count II Continued Facts

**Facts:** Again, as indicated in my brief synopsis, Store Manager Jeff Short, Jennifer Buttrick, the other managers and the other associates at "the Avenues" location of Smith's, did have access to my private existence via this system and the "on-site" monitoring sites during my employment at Smith's.

Jeff Short and Jennifer Buttrick both were fully aware of this system, the contamination harassment that most of the other associates were participating in and that customers associated with the staging were verbally and sexually harassing me whenever I was assigned to "bag" groceries while on schedule, yet they did nothing nor did they attempt to do anything to alleviate the harassment.

---

Also, besides the harassment from the staged customers Jennifer Buttrick should have known that with the images surrounding my character it was inappropriate to assign me to "bag" whenever I was on schedule, especially after the day an "actual" customer took offense because whomever was transmitting while I was "bagging" almost inadvertently touched this particular customer in what seemed to be inappropriately. And there was one other incident with a customer who complained while I was helping "carry out" her groceries because I was directly exposed to this customer's life while loading her groceries into her SUV.

Jennifer Buttrick and/or the other managers were at the "on-site" monitoring site when both of these incidents and other incidents occurred, yet Jennifer Buttrick continued to require that I "bag" while on schedule even if it was not necessary, that is, even when there were younger more appropriate Clerks on schedule and the front end was not busy enough to need extra "baggers".

**Count III:** I was being subjected to harassment by Jennifer Buttrick and then terminated.

**Facts:** On May 25th 2005 I was hired at Smith's Food and Drug as a part time Courtesy Clerk ("bagger"). On the day I was hired Julie, the Manager that hired me, upon my request specifically asked Jennifer to schedule me for about 20 hours [or less] because I had not worked in quite some time [2 years and 2 months] and wanted to start out slowly.

*Count III Facts Continued*

With the look Jennifer Buttrick gave me upon Julie's request, it was obvious Jennifer's Buttrick's determination to end my employment began the day I was hired. I believe it was because Jennifer did not want to extend special accommodations in scheduling for me, Jennifer Buttrick wanted to schedule me just as she scheduled everyone else.

From my very first day of employment at Smith's my work schedule was hectic.

I was scheduled 24 to 28 hours per week on 7:00am 8-hour shifts; there were 1 or 2 days I was scheduled for more than 8 hours and on the Saturday before I was terminated, I was scheduled to work an 8 hour shift until midnight and then on a 7:00am shift the following Sunday morning. Jennifer Buttrick had already planned to terminate my employment that Wednesday (I was not on the schedule after Wednesday the 22nd), I believe Jennifer scheduled me on a midnight/7:00am shift to make my last weekend of employment more difficult.

---

On June 22nd 2005, 27 days after I was hired, without warning, my employment at Smith's Food and Drug was terminated during what I was told a 30-day evaluation. I received a hand delivered letter stating that the reason my employment was terminated was because of a low percentage on my evaluation score (evaluated by Jennifer Buttrick). However, it was obvious Jennifer Buttrick had used that evaluation as a device to terminate my employment, because as Jennifer Buttrick stated during the evaluation, "...there is no reason for me to keep you here...".

The following incident occurred and contributed to the harassment while I was employed at Smith's and I believe, besides not wanting to extend special accommodations in scheduling for me, also contributed to Jennifer Buttrick's decision to terminate my employment:

In early June 2005 I had requested to take Tuesday June 21st off for an event I had planned to attend prior to getting hired at Smith's. Members of the Alliance House[2] were given complimentary group tickets to a June 21st 2005 Stingers game. I had planned, thought about quite often and had looked forward to attending this event for weeks.

*Count III Facts Continued*

> Despite the documented approval to take June 21st off, Jennifer Buttrick scheduled me to work that Tuesday afternoon. On Saturday, June 18th after receiving my schedule for the week of the 19th, when I mentioned to Jennifer that I had been approved to take that Tuesday off, I was given a list of the other front end employees' home telephone numbers and was told to contact the other associates to ask if they would cover the shift I was scheduled for on Tuesday June 21st.
>
> > NOTE: It was Jennifer Buttrick herself who approved for me to take that Tuesday off and I was expected to contact other associates I did not know and who did not know me at their homes asking them to cover hours on a day I was already approved to take off. While "shift covering" is one of Jennifer Buttrick's "thing" as a Front End Supervisor, most of the other front end employees did not like the idea of me calling them at their homes, I heard quite a few of my co-workers state over the external audio system, "don't call me".
>
> On Monday June 20th I spoke with Jennifer Buttrick and told her that I had already been approved to take Tuesday off, that 4 (to 6) other Clerks were scheduled to work during the hours I was scheduled that afternoon and that there was no reason for me to contact anyone at their homes [since more than enough Front End Clerks were already scheduled to cover the shift].
>
> On Wednesday June 22nd after returning from my Tuesday off, I was called into the office for my 30 day evaluation and was told that I was being "let go".
>
> In that 27 day evaluation Jennifer Buttrick verbally stated, "...I feel that you don't smile enough or make enough eye contact with customers..." and that "...there is no reason for me to keep you here...".
>
> ---
>
> During my employment at Smith's I worked with Jennifer Buttrick on the floor 3 to 4 days a few hours per day. Even though Jennifer Buttrick was in the store, Jennifer spent more time monitoring me at the sites via this system than actually working with me. I felt that Jennifer did not spend enough time on the floor during the hours I was scheduled to determine if I "smiled enough" or made "enough eye contact with customers".

*Count III Facts Continued*

> And, during that 27 day evaluation I attempted to discuss my disability with Jennifer Buttrick and Jeff Short (who was also present) so that I could explain that because of the harassment and negative images that were being created around my character while I was in that particular environment, my working conditions were not conducive to smiling and making eye contact with customers. And that, I felt disgusting because of the other employees participation in the harassment who were contaminating products of consumption with their "waste" (feces and urine) and instructing "the people" that had access to my person via this system to "transmit" ("carry") consuming those products.
>
> Jeff Short and Jennifer Buttrick both denied any awareness of this system and the harassment that was occurring.
>
> Also, prior to my termination to the contrary of what was written in the evaluation, Jennifer Buttrick stated via the external audio system that the reason I was being terminated was because "you're fraternizing".
>
> I am not quite sure what Jennifer Buttrick meant by "fraternizing", I believe that remark had something to do with a transmitted conversation with one of the staged customers.
>
> As I mentioned previously, during those 27 days of employment at Smith's every hour I was scheduled to work something was occurring. On this day, one of the staged customers that checked through the cashier line I was "bagging" for intentionally questioned me about my job.
>
> The response was transmitted by "the people" and whomever it was transmitted an attempt to converse with this customer in a "down to earth" manner. I believe this conversation was the reason for Jennifer Buttrick's remark about "fraternizing" and Jennifer Buttrick was not in the immediate vicinity during that conversation.
>
> And lastly, I also believe, in part, that that "shift covering" requirement was a test of some sort. I believe had I attempted to contact the other employees to ask if they would cover the shift that Tuesday afternoon, Jennifer would have scheduled me for the following week. Jennifer Buttrick usually does her scheduling on Wednesdays.

---

[2] The Alliance House located at 1724 South Main Street in SLC is a Valley Mental Health (VMH) clubhouse for VMH clients.

*Cause of Acton Continued Count IV*

**Count IV:** My privacy was invaded and my character was defamed and "sludged" as a result of those in the "audience" during my employment at Smith's and those staged in "the Avenues" location environment attempting to create a "sub-cultured black" image by distorting childhood events that were told to "audiences" 16 years prior to the Smith's "audience".

> **NOTE:** Those who were responsible for this "sub-cultured black" image stunt in the Smith's "audience" may or may not have been employees from other locations, Administration from Corporate Office or anyone associated with the then employees of Smith's Food and Drug. The fact of the matter is, this incident occurred because I was employed in that environment while involuntarily held on this system.

**Facts:** The individuals in the Smith's "audiences", the employees staged at "the Avenues" location and whomever else had access to my person via this system during this stunt were concentrating on and distorting a "sub-cultured" encounter and 2 other events that occurred during my pre-teens (32 years ago). They were attempting to personally associate my character as an adult with the individuals from that "sub-cultured" encounter and one of those events that occurred. They were also insinuating an incestuous relationship with my father from another of those events.

---

The encounter was while my father was considered guardian over myself and my siblings, one day while we were out on errands my father stopped at one of his "hang outs" to chat with one of his friends (then a large black male) who made a comment about certain parts of my anatomy while I was sitting in the back seat with my siblings.

During that "sub-cultured" stunt those in the Smith's "audiences" attempted to use this encounter to personally associate me with the individual who made the comment. They only focused on the individual and the comment that was made and not the psychological impact of the comment that occurred afterwards [3], which was also told in that story 16 years ago.

<mark>
<mark>
<mark>
<mark>
<mark>
<mark>
<mark>
<mark>
<mark>

*Count IV Facts Continued*

> Another event they were focusing on is the day I happened in on my father unnoticed while he was with his then girlfriend. When I told this story 16 years ago I stated that I was "trying to see" what my father and his girlfriend were up to. Those in the Smith's audiences, whomever had access to my person during this stunt and whomever the associate was that stated "watching" over the intercom while they were transmitting thoughts and internal visuals on this event and the "sub-cultured" encounter detailed above, were insinuating that I was "watching" my father and his girlfriend for reasons of incest.
>
> **It was disgusting, embarrassing and insulting.**
>
> NOTE:  This story was told to the "audiences" in 1990, I did not tell this story to the "audiences" during my employment at Smith's Food and Drug. And because I am fully aware of the stereotypical images they have attempted to create since becoming a resident of Salt Lake City, Utah, I would not have told that story to anyone in these Salt Lake "audiences".
>
> **It was a disgusting invasion of privacy.**
>
> Also, for the record, as an adult, based upon my recall of the event, I would have to say that I was "trying to see" in a clinical sense. There were never any thoughts outside of "seeing" what "Straight" (my father) and his girlfriend were up to.

The other event they were focusing on was about my father's accusations of his then girlfriend being personally, "physically" involved with me. This story has never been told[3] yet, however they obtained this information, those in the Smith's "audiences" attempted to use the gist of this repugnant event to personally associate me homosexually with "sub-cultured black" females.

**The association is disgusting.**

This was also a disgusting invasion of privacy and those in the Smith's "audience" attempting to use this event for purposes of harassment while I was in that particular environment is equally disgusting.

---

[3] Only to be addressed with my Psychiatrist.

*Cause of Action Continued Count V*

**Count V:** Smith's Food and Drug allowing their premises to be staged during my employment as part of the harassment that is occurring while I am involuntarily held on this communications system.

**Facts:** Again, as indicated in the *"brief synopsis of my circumstances"* those that are responsible for my being involuntarily held on this system are giving:

- late, great and distant relatives,
- individuals from my past and personal past,
- the friends, relatives and personal associations of individuals from my past and personal past,
- individuals from environments I frequent, think of frequenting or is associated with in any capacity
- and the friends, relatives and personal associations of those individuals,

access to my person and private existence via this system and as a result of the abuse of invasion of privacy and the staging that is occurring in my immediate environments (using the individuals stated above), I am harassed in every environment I frequent, including my work environments.

---

During my employment at "the Avenues" location of Smith's Food and Drug every employee on payroll at that location was either a distant relative, related to or associated with someone from my past, related to someone from one of the other environments I was frequenting during my employment or transferred in from other locations for purposes of the staging.

Before allowing their premises to be used for the staging Smith's Food and Drug Administration and Management were fully aware of the harassment I am being subjected to while involuntarily held on this system and they knew that I would be harassed by the individuals staged in that environment.

# Injury

The injuries that are a result of the actions of the Defendants are:

- The overwhelming stress associated with the invasion of privacy and the constant harassment that was occurring and allowed to occur while I was employed at "the Avenues" location of Smith's Food and Drug. My toes had begun to hemorrhage because the grueling stress in my work environment was affecting my hypoglycemic condition.

- The anxiety associated with the demoralization and degradation that was occurring and allowed to occur by those staged at "the Avenues" location during my employment and "the people" who were given access to my person via this system while I was employed in that environment.

- The embarrassment of the cruel and unusual treatment.

    I was embarrassed while employed at "the Avenues" location because all of the negative attention and harassment everyone was participating in was focused towards me and only me.

- My privacy was invaded, my character was defamed ("sludged") and I was embarrassed because of the "sub-cultured black" image those in the Smith's "audiences" were attempting to create while in "the Avenues" location environment.

- And the overall suffering endured during those 27 days of employment at "the Avenues" location of Smith's Food and Drug and then being terminated.

# Request for Relief

I believe I am entitled to the following relief:

>At least, $250,000 (Two Hundred and Fifty Thousand) in punitive damages plus Attorney and court fees if applicable.

## Administrative Relief

The Plaintiff currently has 2 HUD Complaints pending "further" investigation with the Illinois Department of Human Rights (IDHR) and another HUD Complaint being reviewed by the Illinois Supreme Court. All of these complaints were filed for the same reasons and under the same circumstances as that of Plaintff's EEOC and UALD complaint against Smith's Food and Drug, Inc..

The Illinois Department of Human Rights Case Numbers are:

2004CH2012 and 2004CH1885 both against College Inn Partners.

The Illinois Supreme Court Docket Number is:

102208 filed against:  Illinois Department of Human Rights
Illinois Department of Human Rights Chief Legal Counsel
Thomas Balk
Phillip Martin Real Estate

Contact information for the IDHR and the Illinois Supreme Court:

Illinois Department of Human Rights
100 West Randolph Street
Suite 10-100
Chicago, Illinois 60601

**General Office:**  800-662-3942

Supreme Court of Illinois
Supreme Court Building
Springfield, Illinois 62701

**Clerk's Office:**  217-782-2035

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the Plaintiff in the above action, that he/she has read the above complaint and that the information contained therein is true and correct as believed by Plaintiff. 28 U.S.C. Section 1746; 18 U.S.C. Section 1621.

Executed at _____ on __June 22__, 2006

_____
Janet Jamison

EEOC Form 161 (10/96)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:  Ms. Janet Jamison
     130 South 500 East
     Salt Lake City, UT 84102

From: U. S. Equal Employment Opportunity Commission
     3300 North Central Avenue, Suite #690
     Phoenix, Arizona  85012-1848

[ ] *On behalf of person(s) aggrieved whose identity is Confidential (29CFR & 1601).7(a)*

| Charge Number | EEOC Representative | Telephone Number |
|---|---|---|
| 35C-2006-00170 | David B. Rucker, Supervisor Unit II | (602) 640-5055 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] We cannot investigate your charge because it was not filed within the time limit required by law.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You had 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)* _____

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may pursue this matter further by bringing suit in federal or state court against the respondent(s) named in the charge.  **If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice.** Otherwise your right to sue based on the above-numbered charge will be lost.

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not **be collectible.** (if you file suit, Please send a copy of your court complaint to this office.)

On behalf of the Commission

*Chester V. Bailey*   MAR 2 4 2006

Chester V. Bailey, District Director    (date mailed)

Enclosure(s)
cc: Smiths Food & Drug

# CIVIL COVER SHEET

JS 44 (Rev. 11/04)

RECEIVED CLERK

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED 2006
U.S. DISTRICT COURT
2006 JUN 27 A 10:51
DISTRICT OF UTAH
BY: _____ DEPUTY CLERK

## I. (a) PLAINTIFFS
JANET JAMISON

### DEFENDANTS
SMITHS FOOD AND DRUG, INC.
JENNIFER BUTTRICK, STORE MANAGER

(b) County of Residence of First Listed Plaintiff: SALT LAKE
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: SALT LAKE
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number): PRO SE
P.O. BOX 1191
CENTERVILLE, UTAH 84014 (JSJ2005@YAHOO.COM)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☒ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| | / ☐ 550 Civil Rights | | | |
| | ☐ 446 Amer. w/Disabilities - Other / ☐ 555 Prison Condition | | | |
| | ☐ 440 Other Civil Rights | | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
TITLE VII, CIVIL RIGHTS ACT OF 1964
Brief description of cause: HARASSMENT AND DISCRIMINATION BASED UPON MY RACE (CREED) AND DISABILITY, INVASION OF PRIVACY AND DEFAMATION OF CHARACTER DURING EMPLOYMENT AND WRONGFUL TERMINATION.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ AT LEAST $250,000 (TWO HUNDRED AND FIFTY THOUSAND)
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE: ILLINOIS SUPREME COURT    DOCKET NUMBER: 102208

DATE: JUNE 21, 2006
SIGNATURE OF ATTORNEY OF RECORD: [signature] ATTORNEY PRO SE

**FOR OFFICE USE ONLY**

RECEIPT #___ AMOUNT___ APPLYING IFP___ JUDGE___ MAG. JUDGE___